IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE PREFERRED INSURANCE COMPANY, A Pennsylvania Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 23-cv-01040 |
| OXFORD 127 HURON HOTEL VENTURE PROPERTY COMPANY LLC DBA, a Delaware Limited Liability Company; and HENRY TAYLOR and GERMAN MENDOZA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, HARLEYSVILLE PREFERRED INSURANCE COMPANY, A Pennsylvania Corporation, by and through its attorneys, MEAGHER & GEER, P.L.L.P., states the following as its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, against Defendants, OXFORD 127 HURON HOTEL VENTURE PROPERTY COMPANY LLC DBA, a Delaware Limited Liability Company; and HENRY TAYLOR and GERMAN MENDOZA:

**Introduction**

1. This is a Declaratory Judgment action to obtain a declaration of the rights and obligations under a CGL insurance policy, Policy Number MPA00000045471S, issued by Harleysville Preferred Insurance Company ("Harleysville") and issued to their named insured, OXFORD 127 HURON HOTEL VENTURE PROPERTY COMPANY LLC DBA, a Delaware Limited Liability Company ("Oxford"). Plaintiff seeks a declaration from this Court regarding the extent of the Plaintiff's rights and obligations, if any, under the Policy for the allegations in the lawsuit entitled, *Henry Taylor and German Mendoza, individually and on behalf of all others*

*similarly situated v. Oxford Hotels & Resorts, LLC, case no. 2019 CH 03909.*, filed in the Chancery Division of the Circuit Court of Cook County, State of Illinois (the "Underlying Complaint"). (A copy of the Underlying Complaint is attached as Exhibit A.)

2. Plaintiff seeks a declaration from this Court that it owes no obligation under its policy to defend and/or to indemnify Oxford with regard to the allegations in the Complaint.

**Jurisdiction and Venue**

3. Plaintiff, Harleysville Preferred Insurance Company ("Harleysville"), is an insurance company with its principal place of business in Harleysville, Pennsylvania and was authorized to issue policies of insurance in the state of Illinois.

4. Defendant, OXFORD 127 HURON HOTEL VENTURE PROPERTY COMPANY. ("Oxford"), is a limited liability company organized under the laws of Delaware, with its principal place of business in Chicago, Illinois. Oxford conducts business in Cook County and throughout Illinois. The Underlying Complaint alleges that Oxford "owns, operates and/ or manages large-scale hotels, resorts, and conference centers in major metropolitan markets across the United States." (Exhibit A, ¶ 1.)

5. Defendant, Henry Taylor, (Taylor) is a citizen of Illinois. Plaintiff names Taylor as a potentially interested party by virtue of his status as the named plaintiff and putative class representative in the Underlying Complaint. No affirmative relief is sought against Taylor. (*See* Exhibit A.)

6. Defendant, German Mendoza, (Mendoza) is a citizen of Illinois. Plaintiff names Mendoza as a potentially interested party by virtue of his status as the named plaintiff and putative class representative in the Underlying Complaint. No affirmative relief is sought against Mendoza. (*See* Exhibit A.)

7. Taylor alleges in the Underlying Complaint that the violations of BIPA occurred while during his employment at defendant's 'Hotel Julian location' in Chicago, Illinois.' (*See* Exhibit A. at par. 30)

8. Mendoza alleges in the Underlying Complaint that the violations of BIPA occurred while during his employment at defendant's 'Claridge House location', in Chicago, Illinois. (*See* Exhibit A. at par. 31)

9. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between the Plaintiff, Harleysville, on the one hand, and Defendants, Oxford, Taylor and Mendoza, on the other hand; and (b) the amount in controversy, including the potential cost of defending and indemnifying Oxford in the Underlying Complaint well exceeds $75,000.

10. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in this District, including where the statutory violations alleged in the Underlying Complaint occurred and where the underlying lawsuit is pending.

11. An actual justiciable controversy exists between Harleysville, on the one hand, and Oxford, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**The Underlying Putative Class Action Lawsuit**

12. On March 26, 2019, Defendants Taylor and Mendoza filed a putative class action complaint directed against Oxford in the Chancery Division of the Circuit Court of Cook County,

Illinois, which is entitled, *Henry Taylor and German Mendoza, individually and on behalf of all others similarly situated v. Oxford Hotels & Resorts, LLC, case no. 2019 CH 03909.* (The "Underlying Complaint"). (*See* Exhibit A, Second Amended Class Action Complaint.)

13. The Underlying Complaint contains three counts directed against Oxford, which allege that Oxford violated the Illinois Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.] by using "an employee time tracking system that requires employees to use their fingerprints as a means of authentication" in order to 'punch' in to our out of work." (See Exhibit A at par. 25).

14. The Underlying Complaint alleges that Oxford "failed to inform its workers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all." Exhibit A at par. 26).

15. The Underlying Complaint further alleges that Oxford "similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints, when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. A worker who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Oxford databases—or if they ever will be." (Exhibit A at par. 27).

16. The Underlying Complaint contains three 'Causes of Action:' Violation of BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule,' (Exhibit A at page 10), 'Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information.' (Exhibit A at page 12), and Violation of BIPA Section 15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent." (Exhibit A at page 14).

17. The Underlying Complaint alleges that Taylor worked for Oxford "during a portion of the year 2019 at its Hotel Julian location. (Exhibit A at par. 30).

18. The Underlying Complaint alleges that Mendoza worked for Oxford "during a portion of the year 2018 at its Claridge House location. (Exhibit A at par. 31).

19. The Underlying Complaint seeks to certify a purported class of "all residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Oxford while in Illinois." (Exhibit A, at par. 39).

20. The Underlying Complaint seeks statutory damages available under BIPA to Taylor and Mendoza, as well as for each putative class member, including $1,000 per negligent violation, $5,000 per intentional or reckless violation, attorneys' fees' and costs, and declaratory relief. (Exhibit A, paragraphs 52, 63, 84 and Prayer for Relief at page 17).

## The Harleysville CGL Policy

21. Harleysville issued to Oxford CGL Policy No. MPA00000045471S, effective February 1, 2015 to February 1, 2017 (A copy of the Harleysville Policy is attached hereto and made a part hereof as Exhibit B).

22. The Harleysville CGL Policy contains the following policy provisions:

> **Coverage A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.
>
> ***
>
> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.

\*\*\*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
    f. The use of another's advertising idea in your "advertisement"; or
    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*\*\*

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a. All expenses we incur.

    b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

\*\*\*

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

\*\*\*

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

**B.** Exclusion p. of Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
>
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*\*\*

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

> **B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**
>
> This insurance does not apply to:
>
> "Personal and advertising injury" to:
>
> (1) A person arising out of any:
>
> > (a) Refusal to employ that person;
> >
> > (b) Termination of that person's employment; or
> >
> > (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

\*\*\*

## ILLINOIS CHANGES – DEFENSE COSTS

> **B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

\* \* \* \* \*

**Oxford's Tender to Harleysville**

23.     On or about December 5, 2022, Oxford tendered to Harleysville the defense and indemnity of Oxford in relation to the Underlying Complaint.

24.     On or about January 30, 2023, Harleysville undertook the defense of Oxford and issued to Oxford its Reservation of Rights letter in which Harleysville notified Oxford that it had reviewed the underlying complaint and its applicable policy and determined that there were significant questions related to whether Harleysville owed a duty to defend or indemnify Oxford in the underlying suit.

**COUNT I – DECLARATORY JUDGMENT**

25.     Harleysville repeats and re-alleges the allegations in Paragraphs 1 through 24 as though fully set forth herein as paragraph 25.

26.     Coverage A of the Harleysville Policy defines "bodily injury" as "The policy defines "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time." (*See* Exhibit B)  The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related bodily injury, sickness or death.  Therefore, Harleysville owes no duty to provide coverage for bodily injury under Coverage A of the Harleysville Policy.

27.     Coverage B of the Harleysville Policy provides for coverage for 'Personal and Advertising Injury (PAI).  However, Coverage B is precluded by the exclusion titled "Recording and Distribution of Material in Violation of Law Exclusion", which excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or

distribution of material or information." (See Exhibit B). This Exclusion precludes PAI coverage for the Underlying Complaint, because the Underlying Complaint arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Therefore, Harleysville owes no duty to provide coverage for bodily injury under Coverage B of the Harleysville Policy.

28. Additionally, and in the alternative, Coverage B is also precluded by the exclusion titled the 'Employment-Related Practices Exclusion' which precludes coverage for personal and advertising injury causing harm to an employee arising from "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;" (See Exhibit B). This exclusion precludes coverage for the Underlying Complaint which alleges that Oxford violated BIPA by instituting an employment-related practice and policy that required the collection of its employees fingerprint data "as a means of authentication" in order to "'punch' in to our out of work." (See Exhibit A at par. 25). Because the Underlying Complaint alleges that this employment-related practice and policy can cause harm to an employee, it is encompassed within the Exclusion. Accordingly, Harleysville owes no duty to provide coverage for bodily injury under Coverage B of the Harleysville Policy under 'Employment-Related Practices Exclusion.'

29. Additionally, and in the alternative, coverage under the Harleysville Policy is also precluded because the causes of action of the individual plaintiffs and the putative class did not accrue during the pendency of the Harleysville Policy. Here, the Harleysville policy was in effect from February 1, 2015 to February 1, 2017. However, the Underlying Complaint

alleges that both plaintiff, Taylor and Plaintiff, Mendoza were employed by Oxford in 2019 and 2018, respectively. (See Exhibit A at par. 30 and 31). Accordingly, both individual plaintiffs were employed by Oxford <u>after</u> the expiration of the Harleysville Policy. Further, the putative class has not yet been certified and may never be certified. Accordingly, Harleysville owes no duty to provide coverage to Oxford for any alleged BIPA violations that occurred prior to February 1, 2015 or otherwise outside of the effective dates of the Harleysville CGL Policy.

30. Harleysville specifically denies any and all liability under the terms and provisions of the aforementioned policy of insurance, and each of its renewals, issued to Oxford, and insists that it is not obligated to defend or indemnify any judgment entered against Oxford in the Underlying Suit and, by reason of such demand, Harleysville is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

31. Finally, Harleysville seeks a declaration that it is entitled to be reimbursed for all defense costs incurred in the defense of the underlying lawsuit in the event there is a determination that the underlying suit is not covered by the Harleysville Policy in accordance with its CGL policy provision titled 'Illinois Changes – Defense Costs.'

32. An actual controversy exists between Harleysville and Oxford, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, HARLEYSVILLE PREFERRED INSURANCE COMPANY, respectfully prays that this Honorable Court:

    A.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Harleysville CGL Policy;

B. Declare that Harleysville owes no duty to defend OXFORD 127 HURON HOTEL VENTURE PROPERTY COMPANY LLC DBA, a Delaware Limited Liability Company under the Harleysville CGL policy, No. MPA00000045471S, in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of Cook County, Illinois, under case no. *2019 CH 03909*;

C. Declare that Harleysville is entitled to be reimbursed for all defense costs incurred in the event there is a determination that the underlying suit is not covered by the Harleysville Policy; and

D. And any and all other relief that this Court deems just and equitable under the facts and circumstances.

HARLEYSVILLE PREFERRED INSURANCE COMPANY,


By: _____s/ Daniel I. Babetch_____
           One of Its Attorneys

Kurt Zitzer
Daniel I. Babetch
MEAGHER & GEER, P.L.L.P.
216 N. Jefferson Street, Suite 100
Chicago, Illinois 60661
(312) 463-1045
Attorney No. 6292410
Our File No.:   56597-00121
kzitzer@meagher.com
dbabetch@meagher.com